303 Ga. 21
FINAL COPY

S17A1854.  STORK v. THE STATE.

NAHMIAS, Justice.

Appellant Samuel Stork was convicted of malice murder in connection with the shooting death of Rodney Pate.  In this appeal, he claims that the evidence was insufficient to support his conviction and that his trial counsel provided ineffective assistance by failing to call a witness.  Neither of these claims has merit, so we affirm.[1]

1.    (a)    Viewed in the light most favorable to the verdict, the evidence presented at trial showed the following.  On February 1, 2014,  Pate, Adarrius Keaton, and Aquala Mobley were hanging out at Shiver's Alley, a dead-end

---

[1] Pate was killed on February 8, 2014.  On April 29, 2014, a Mitchell County grand jury indicted Appellant for malice murder, felony murder, and aggravated assault.  His trial began on January 12, 2015, and two days later the jury found him guilty of all charges.  The trial court sentenced Appellant to serve life in prison without parole for malice murder; the felony murder verdict was vacated and the aggravated assault verdict was merged for sentencing purposes. Appellant filed a timely motion for new trial, which he amended with new counsel on October 5, 2015.  After an evidentiary hearing, the trial court denied the motion on August 22, 2016.  On April 5, 2017, Appellant filed a motion for out-of-time appeal on the ground that his counsel had not been notified of the August 2016 order.  After the trial court granted the motion, Appellant filed a timely notice of appeal, and the case was docketed in this Court for the August 2017 term and submitted for decision on the briefs.

street leading to an apartment complex in Camilla, Georgia. Mobley was Keaton's cousin and Appellant's girlfriend, and she was pregnant with Appellant's child. When she told Pate and Keaton that she had not been able to get in touch with Appellant, they told her that it was probably because he was with another girl. Pate then drove the group to Appellant's home, where they found Appellant and Shakendria Brown sitting in a car together. Appellant and Brown drove away, but Pate, Keaton, and Mobley followed them. When Pate caught up, he blocked Appellant's car, and Keaton and Mobley got out and yelled at Appellant.

The shooting occurred a week later, on the night of February 8. Pate, Keaton, and Jason Williams were drinking at Shiver's Alley. Mobley, who was in her apartment nearby, called Appellant and asked him to come get her. Appellant picked her up, and as he was driving away, Pate got in front of the car, banged on it, and said, "You pus*y a*s nig*er. You and that bit*h better stop playing with me." Appellant and Pate argued, then Appellant drove Mobley to his house, which was about 10 minutes away. After going inside for a few seconds, Appellant drove back to Shiver's Alley. On the way back, Mobley could tell that Appellant was upset about his encounter with Pate. She

2

told Appellant, "If you [are] thinking about [doing] something stupid, just think about our baby." When they returned to the alley, Appellant parked the car, and he and Mobley got out. Mobley walked towards her apartment, but Appellant walked up to Pate. Williams heard Appellant "talking trash" to Pate, and another witness heard Appellant say, "Why you banging on my window like that?" Appellant then pulled out a gun and shot Pate seven or eight times. At some point during the gunfire, Pate fell to the ground, and Appellant continued to shoot. Pate died from the gunshot wounds.

Appellant left the scene and drove home, then ran to some nearby railroad tracks where he called a friend, Darius Hines, to pick him up. As Hines and Appellant drove, they saw a police car, and Appellant asked Hines to let him out, saying, "I think they're looking for me." Appellant turned himself in to the officer in the car. He was still wearing the jacket that witnesses described him wearing when he shot Pate; the jacket later tested positive for gunshot residue. Appellant told the police that he had been in Albany that night with Hines and that he did not know Pate. Eight 9mm shell casings were found at the crime scene; they were fired from the same gun as a shell casing found in a dresser in Appellant's room.

3

Contrary to his statement to the police, Appellant testified at trial that he knew Pate even before the February 1 incident and that he remembered the first encounter with Pate on the night of the shooting. Appellant claimed that Pate came up to him cursing when he arrived back at Shiver's Alley and that he felt threatened and angry when Pate banged on his car but did not remember shooting Pate or anything else from the time of the shooting until he reached the railroad tracks. Appellant's defense at trial was that he was out of his mind with rage and shot Pate in the heat of the moment. The jury was given a voluntary manslaughter instruction but found Appellant guilty as charged.

(b)     Appellant argues that the evidence summarized above was not sufficient to prove malice murder beyond a reasonable doubt, asserting that the evidence supported only a conviction for the lesser included offense of voluntary manslaughter. We disagree.

Although Appellant testified that he was angry when Pate banged on the hood of his car and argued with him, he did not shoot Pate immediately in response. Instead, he waited the 20 minutes or so that it took to drive with his girlfriend to his house, go inside briefly, and drive back to Shiver's Alley. Moreover, the evidence shows that Appellant shot the victim seven or eight

4

times, continuing to shoot even after the victim had fallen to the ground. And the jury was entitled to disbelieve Appellant's claim that he could not remember the fatal encounter, particularly given his awareness that the police were looking for him and the lies he told to the police. Viewed in the light most favorable to the verdict, the evidence was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of malice murder rather than voluntary manslaughter. See Jackson v. Virginia, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). See also Sears v. State, 298 Ga. 400, 404 (782 SE2d 259) (2016) (discussing the jury's authority to reject a voluntary manslaughter verdict in favor of a finding of malice murder); Vega v. State, 285 Ga. 32, 33 (673 SE2d 223) (2009) ("'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'" (citation omitted)).

2. Appellant also argues that his trial counsel provided ineffective assistance by failing to call Shakendria Brown as a witness at trial. Brown testified at the motion for new trial hearing that if she had been called, she would have addressed the volatile relationship between Appellant and the victim. Specifically, she would have testified that Appellant told her that Pate

5

and Keaton were mad at him, and she would have given more details about the incident on February 1.

To prevail on this claim, Appellant must show both that his counsel's performance was professionally deficient and that, but for the deficiency, there is a reasonable probability that the outcome of the trial would have been more favorable to him. See Strickland v. Washington, 466 U.S. 668, 687, 694 (104 SCt 2052, 80 LE2d 674) (1984). Brown's account of the February 1 incident was nearly identical to the account offered by Appellant at trial, and substantially similar to the trial testimony of Mobley and Keaton. There is no reasonable probability that the outcome of the trial would have been different had Brown been called to give her cumulative testimony. See Wesley v. State, 286 Ga. 355, 358 (689 SE2d 280) (2010). Moreover, in light of the compelling evidence regarding the fatal encounter, Appellant has failed to show how some additional testimony about his previous disputes with the victim would in reasonable probability have convinced the jury not to convict him of malice murder. See Washington v. State, 285 Ga. 541, 544 (678 SE2d 900) (2009). Thus, Appellant's ineffective assistance claim fails. See Gomez v. State, 300 Ga. 571, 573 (797 SE2d 478) (2017) ("If a defendant fails to meet his burden

6

on one prong of the two-prong [Strickland] test, then the other prong need not be reviewed by the Court." (citation omitted)).

Judgment affirmed.  All the Justices concur.

Decided February 5, 2018.

Murder. Mitchell Superior Court. Before Judge Chason.

Harrell & Lewis, Jami L. Lewis, for appellant.

Joseph K. Mulholland, District Attorney, Moruf O. Oseni, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew M. Youn, Assistant Attorney General, for appellee.